# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 11cr3518-IEG |
| Plaintiff, | Order Denying Defendant's Motion to Dismiss the Indictment |
| vs. | |
| DANIEL ARTHUR CLEVENGER, | |
| Defendant. | |

Presently before the Court is defendant Daniel Arthur Clevenger's motion to dismiss the indictment. Defendant argues dismissal is appropriate as a remedy for the government's violation of Fed. R. Crim. P. 5, based on outrageous government conduct, or as an exercise of the Court's supervisory powers. For the reasons set forth herein, the Court DENIES defendant's motion.

## *Background*

Defendant was arrested at approximately 3:45 p.m. on Monday, July 25, 2011 on suspicion of alien smuggling. He was transported to the Brown Field Border Patrol Station, where he arrived at approximately 4:43 p.m. [Declaration of Border Patrol Agent Jeffrey Selden ("Selden Decl."), ¶ 5-6.] Supervisory Border Patrol Agent Zimmer went to the room where defendant was being detained around 5:50 p.m. However, because he believed defendant was under the influence of a controlled substance, Supervisory Border Patrol Agent Zimmer "decided to give Clevenger a few hours to compose himself and to allow any possible side effects [of] his prior crystal meth

1  binge to subside." [Report of Investigation ("ROI"), Doc. 16-2, pp. 5-6]

2  Border Patrol Agent Ramon Garcia took defendant's statement around 12:30 a.m. on
3  July 26. [ROI, p.6.] After defendant made his statement, he remained at the Brown Field Station.
4  On Tuesday morning, July 26, the Prosecutions Unit at the Brown Field Station called the MCC,
5  received a booking window number, and was told that an MCC official would call when space was
6  available. [Selden Decl., ¶ 7.]

7  At approximately 7 a.m. on Wednesday, July 27, an official from MCC informed the
8  Border Patrol Prosecutions Officer they had space for defendant. [Selden Decl., ¶ 11.] The
9  complaint and probable cause statement were taken to the U.S. Attorney's Office that morning.
10 The complaint was signed and filed shortly thereafter. Defendant arrived at MCC at
11 approximately 9:30 a.m. [Selden Decl., ¶ 12.] Defendant was set for initial appearance before
12 Magistrate Judge McCurine on Wednesday, July 27, but for unknown reasons that appearance was
13 continued to Thursday, July 28, at 10:30 a.m. [Doc. Nos. 2 and 3.]

14 Throughout the time he was detained at the Brown Field Station, defendant was the only
15 prisoner in the holding cell. [Selden Decl., ¶ 8.] Defendant received regular meals. [Selden Decl.,
16 ¶ 9.] However, he was not allowed to bathe, brush his teeth, change his clothes, or make a
17 telephone call.[1] Defendant slept on the floor with two blankets but with no mattress or pillow.
18 The room in which he was detained had a toilet with an attached faucet which was the only source
19 of water. He was not given a cup from which to drink.[2] He was fed bean, egg, and cheese burritos
20 for breakfast, lunch and dinner. He was not given access to recreation, medical services, or
21 psychological counseling.[3]

## *Discussion*

23 Defendant argues the persistent failure to present arrestees in this District to a magistrate
24 judge without unnecessary delay violates Fed. R. Crim. P. 5 and due process. Defendant argues

---

[1] Although counsel submits declarations from other defendants in cases before this Court, she does not produce a declaration from defendant regarding these matters.

[2] At the time of the hearing, government counsel indicated defendant was provided water to drink during his detention.

[3] Defendant cites no particular medical or psychological need which went un-met.

both the delay in bringing arrestees to court, and the conditions under which they are detained at Border Patrol stations, require correction.[4]

### 1. *Presentment and Rule 5*

A law enforcement officer has the duty to present an arrestee before a magistrate judge without unnecessary delay. United States v. Garcia-Hernandez, 569 F.3d 1100, 1104 (9th Cir. 2009); Fed. R .Crim. P. 5(a). The primary concern of the presentment requirement since common law has been to "prevent secret detention" and to "inform a suspect of the charges against him." Corley v. United States, 556 U.S. 303, 129 S. Ct. 1558, 1563 (2009). The remedy for an unnecessary delay is suppression of statements made by the arrestee. Id.

There is no authority for defendant's argument that the Court may dismiss the indictment as a sanction for violation of Rule 5. In combination, Rule 5 and 18 U.S.C. § 3501 delineate the prompt presentment requirement and the remedies for failure to promptly bring an arrestee before the nearest magistrate judge. Voluntary statements given within the first six hours of detention are admissible, subject to the rules of evidence. 18 U.S.C. § 3501(c); Corley, 129 S. Ct. at 1571. Statements made outside the initial six hour period (or such longer time period as the court deems "reasonable considering the means of transportation and the distance to be traveled to the nearest available magistrate"), may also be admissible unless the court determines the delay was unreasonable or unnecessary Id.; see also Garcia-Hernandez, 569 F.3d at 1105. Violation of Rule 5 does not justify dismissal of the indictment. United States v. Savchenko, 201 F.R.D. 503 (S.D. Cal. 2001) (discussing the cases and concluding that suppression of statements, rather than dismissal, is the only remedy available under Rule 5). The Court DENIES defendant's motion to dismiss under Rule 5.

### 2. *Due Process and the Court's supervisory powers*

Defendant argues it violates due process "for pretrial arrestees to be held in custody for days at a time, with no counsel, no bail determination, no ability to contact family, while being

---

[4] Defendant also argues the District's policy requiring arrestees to be booked into the Imperial County Jail or MCC prior to being brought to court is unlawful if it results in extensive delays. The District has no formal policy on this matter. The Court defers to the executive branch agencies to take such steps as are necessary and appropriate to coordinate the safe and orderly movement of prisoners.

made to sleep on metal benches or the floor, with or without a blanket, given minimal food each day, no clean clothes, no access to religious services, no access to physical exercise, and no opportunity for personal hygiene." Defendant makes sweeping arguments about systemic issues associated with the processing and detention of arrestees by the Border Patrol. However, he fails to individualize those claims to justify dismissal of his case.

There are two grounds upon which the Court may dismiss an indictment based upon government misconduct. First, where the government engages in conduct "so grossly shocking and so outrageous as to violate the universal sense of justice," the court may outright dismiss the indictment. United States v. Lopez, 577 F.3d 1053, 1068 (9th Cir. 2009). This is an "extremely high standard." United States v. Nobari, 574 F.3d 1065, 1081 (9th Cir. 2009). A defendant must also show he was prejudiced by the outrageous government conduct in order to warrant dismissal. United States v. Struckman, 611 F.3d 560, 574 (9th Cir. 2010); United States v. Ross, 372 F.3d 1097, 1110 (9th Cir. 2004). Here, the government delayed in bringing defendant to Court and held him under poor conditions at the Brown Field Station. However, the government's conduct was not "grossly shocking" or "outrageous" and defendant has made no attempt to demonstrate prejudice.

The Court may also exercise its supervisory powers to dismiss an indictment based upon government misconduct. Even where the government's conduct does not rise to the level of a due process violation, the court may dismiss an indictment under its inherent supervisory powers

> (1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct.

Struckman, 611 F.3d at 574 (quoting United States v. Matta-Ballesteros, 71 F.3d 754, 763 (9th Cir. 1995)). Defendant must demonstrate prejudice. Id. at 575. Here, defendant argues dismissal is necessary to remedy the government's ongoing and systemic violation of Rule 5, and to address the deplorable conditions under which arrestees are held.

It is disturbing that in some of these cases defendants are being held for more than a week, with up to 25 people in the same room, with nothing on which to sleep, using one common toilet, without access to hygiene items (including soap), unable to bathe or change their clothing, and

1 unable to make telephone calls or consult with an attorney. But that is not defendant's case.
2 Defendant was housed at the Brown Field Station for 1 ½ days before he was taken to the MCC.
3 Conditions were not ideal, but they were not "deplorable." Furthermore, defendant has made no
4 attempt to demonstrate he was prejudiced by the length or conditions of his detention. The Court
5 DENIES defendant's motion to dismiss the indictment based upon outrageous government
6 conduct.

7 *3.* *Writ of Prohibition*

8 Finally, defendant requests that the Court issue a writ of prohibition, ordering the United
9 States to immediately cease its unlawful practices, under the authority of the All Writs Act, 28
10 U.S.C. § 1651. Defendant does not cite any authority for the proposition that such a writ could be
11 used to provide a remedy for the alleged violations. Furthermore, defendant has not demonstrated
12 that this criminal case provides an adequate jurisdictional basis for the issuance of such a writ,
13 what parties it believes should be enjoined, or that the parties to be enjoined have been given
14 appropriate notice and opportunity to be heard. Therefore, the Court DENIES defendant's motion.

15 **IT IS SO ORDERED**.

16 **DATED: October 13, 2011**

17
18 **IRMA E. GONZALEZ, Chief Judge**
**United States District Court**