# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                Plaintiff,<br>vs.<br><br>DANIEL ARTHUR CLEVENGER,<br><br>                                Defendant. | CASE NO. 11-cr-3518 – IEG<br><br>ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS STATEMENTS [Doc. No. 16]. |

Presently before the Court is defendant Daniel Arthur Clevenger's motion to suppress his statements based on: (1) the agents' failure to provide him with warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966); (2) delay in presentment under *Corley v. United States*, 129 S. Ct. 1558 (2009); and (3) the agents' engagement in a two-step interrogation strategy prohibited by *Missouri v. Seibert*, 542 U.S. 600 (2004), and *United States v. Williams*, 435 F.3d 1148 (9th Cir. 2006). The Court held evidentiary hearings on September 28, 2011 and October 12, 2011 with regard to the motion. Having heard the testimony and considered the parties' arguments, and for the reasons set forth below, the Court **DENIES** the motion to suppress.

**BACKGROUND**

Clevenger was arrested at approximately 3:45 p.m. on Monday, July 25, 2011 on suspicion of alien smuggling. He was transported to the Brown Field Border Patrol Station, where he arrived at approximately 4:43 p.m. (Selden Decl. ¶¶ 5-6 [Doc. No. 19-2].) He was processed and

1 placed in a holding cell.  Throughout the time he was detained at the Brown Field Station,
2 Clevenger was the only prisoner in that holding cell.  (*Id.* ¶ 8.)  He received three regular meals per
3 day—each consisting of a bean, egg, and cheese burrito.  According to Clevenger, he was not
4 allowed to bathe, shower, or brush his teeth.  He could not change his clothes and slept on the floor
5 with only two blankets.  The room in which he was detained had a toilet with an attached faucet.

6       Shortly after Clevenger's arrest, Border Patrol agents performed a canine screening of his
7 vehicle and discovered a small bag containing crystal methamphetamine.  (Report of Investigation
8 ("ROI") at 5-6 [Doc. No. 16-2, App. L].)   While observing Clevenger through a camera in his
9 holding cell, the agents also noticed that he appeared to be extremely agitated, was talking to
10 himself, and was digging at his skin.  (*Id.* at 6.)  At 5:50 p.m., Supervisory Border Patrol Agent
11 ("SBPA") Zimmer went into Clevenger's holding cell to inquire whether Clevenger was under the
12 influence of any drugs at that time.  (*Id.* at 5.)  According to the Report of Investigation:

13 > Clevenger stated that he had last smoked crystal meth on Saturday July 23, 2011.
> Clevenger stated that it was his birthday and he had a bad birthday so he smoked
14 > crystal meth pretty much all that day up to about midnight.  Clevenger stated that he
> was just giving some people a ride.  He then stated the guy spoke perfect English to
15 > him and he had "fucked up".

16 (*Id.* at 6.)  Because he believed Clevenger was under the influence of a controlled substance,
17 SBPA Zimmer "decided to give Clevenger a few hours to compose himself and to allow any
18 possible side effects [of] his prior crystal meth binge to subside." (*Id.*)

19       Border Patrol agent Garcia took Clevenger's statement at around 12:30 a.m. on July 26,
20 2011.  The statement was made in English and was video-taped.  Before taking the statement,
21 agent Garcia informed Clevenger of his *Miranda* rights.  While agent Garcia was informing him of
22 his rights, Clevenger asked whether he had been arrested.  Agent Garcia answered that Clevenger
23 had been arrested for alien smuggling.  Clevenger then asked about obtaining a lawyer, but was
24 informed that he would not get one until he was taken downtown to the Metropolitan Correctional
25 Center ("MCC").  Following this exchange, Clevenger agreed to waive his right to remain silent
26 and to have counsel present, and gave a statement to agent Garcia.  According to the interviewing
27 agents, Clevenger did not appear to be under the influence of any drugs during the interview.
28       Clevenger's interview focused on the events leading up to him being arrested for alien

smuggling. (ROI at 6-7.) After Clevenger made his statement, he remained at the Brown Field Station. On Tuesday morning, July 26, 2011, the Prosecutions Unit at the Brown Field Station called the MCC, received a booking window number, and were told that an MCC official would call when space became available. (Selden Decl. ¶ 7.) At approximately 7 a.m. on Wednesday, July 27, 2011, an official from MCC informed the Border Patrol Prosecutions Officer that they had the available space. (*Id.* ¶ 11.) The complaint and probable cause statement were taken to the U.S. Attorney's Office that morning, and the complaint was signed and filed shortly thereafter. (*Id.* ¶ 10.) Clevenger arrived at the MCC at approximately 9:30 a.m. and was set for initial appearance before Magistrate Judge McCurine on Wednesday, July 27, 2011. For unknown reasons, that appearance was continued to Thursday, July 28, 2011 at 10:30 a.m. [*See* Doc. Nos. 2 & 3.]

## DISCUSSION

Clevenger makes three separate arguments in his motion to suppress: (1) his first statement to the agents about his methamphetamine use at 5:50 p.m. on July 25, 2011 should be suppressed because he was not advised of his *Miranda* rights; (2) his second statement to the agents about the events leading to the alien smuggling charges made at 12:30 a.m. on July 26, 2011 should be suppressed because the nine-hour period between the time of his arrest and the time when he made that statement amounted to an unreasonable delay under *Corley*, 129 S. Ct. 1558; and (3) his second statement should also be suppressed because the agents engaged in a two-step interrogation strategy prohibited by *Seibert*, 542 U.S. 600, and *Williams*, 435 F.3d 1148.

**I.  Suppression of the pre-*Mirandized* statement.**

There is no dispute that Clevenger's first statement at 5:50 p.m. was obtained before Clevenger was advised of his *Miranda* rights. At the evidentiary hearing, however, the government represented that it does not intend to use anything said during that statement at trial. Based on the government's representations, the Court **DENIES AS MOOT** Clevenger's motion to suppress on this ground.

**II.  Suppression based on delay in presentment.**

Clevenger next alleges that his second statement to the agents, made at 12:30 a.m. on July 26, 2011, should be suppressed because the nine-hour period between the time of his arrest and the

time when he made that statement amounted to an unreasonable delay under *Corley*, 129 S. Ct. 1558.  The Government contends the delay was reasonable because it was due to processing and because it was necessary to allow Clevenger to recover from his prior use of methamphetamine.

    A.    The *McNabb-Mallory* Rule, Federal Rule of Criminal Procedure 5(a), 18 U.S.C. § 3501(c), and *Corley v. United States*.

The rule commonly known as the *McNabb-Mallory* Rule, styled after the Supreme Court's decisions in *McNabb v. United States*, 318 U.S. 332 (1943), and *Mallory v. United States*, 354 U.S. 449 (1957), "'generally renders inadmissible confessions made during periods of detention that violate the prompt presentment requirement of Rule 5(a).'"  *Corley*, 129 S. Ct. at 1563 (citation omitted).  Rule 5(a) of the Federal Rules of Criminal Procedure states that "[a] person making an arrest within the United States must take the defendant *without unnecessary delay* before a magistrate judge" (emphasis added).

In response to the Supreme Court's rulings in *McNabb* and *Mallory*, Congress enacted 18 U.S.C. § 3501(c).  Section 3501(c) provides, in pertinent part, that:

> [A] confession made or given by . . . a defendant . . . , while . . . under arrest or other detention . . . , shall not be inadmissible solely because of delay in bringing such person before a magistrate judge . . . if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest . . . .

Section 3501(c) further provides that "the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate judge . . . beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate judge . . . ."

The Supreme Court recently reaffirmed the applicability of the *McNabb-Mallory* Rule post 18 U.S.C. § 3501(c) in *Corley v. United States*, 129 S. Ct. 1558.  The Supreme Court set forth a two-part test for assessing potential violations of the prompt-presentment requirement:

> [A] district court with a suppression claim must find whether the defendant confessed within six hours of arrest (unless a longer delay was "reasonable considering the means of transportation and the distance to be traveled to the nearest available magistrate").  [1]  If the confession came within that period, it is admissible, subject to the other Rules of Evidence, so long as it was "made voluntarily and ... the weight to be given it is left to the jury."  [2]  If the confession occurred before presentment and beyond six hours, however, the court must decide whether delaying that long was unreasonable or unnecessary under the

*McNabb–Mallory* cases, and if it was, the confession is to be suppressed. *Id.* at 1571 (internal citations omitted). Because the primary purpose of the prompt presentment requirement is to prevent law enforcement officials from secretly detaining individuals for lengthy periods and presenting them to a magistrate only after obtaining a confession, the Supreme Court reiterated that "delay for the purpose of interrogation is the epitome of 'unnecessary delay.'" *Id.* at 1562-63 (citations omitted). Moreover, "even voluntary confessions are inadmissible if given after an unreasonable delay in presentment." *Id.* at 1563 (citation omitted).

B. Analysis

In this case, it is undisputed that Clevenger's second statement to the agents "occurred before presentment and beyond six hours." *See id.* at 1571. The delay was also not due to "the means of transportation and the distance to be traveled to the nearest available . . . magistrate judge." *See* 18 U.S.C. § 3501(c). Accordingly, the question for the Court is whether the nine-hour delay in taking Clevenger's statement was "unreasonable or unnecessary" under the *McNabb-Mallory* Rule. *See Corley*, 129 S. Ct. at 1571.

The delay in this case was not "unreasonable or unnecessary." At the evidentiary hearing, SBPA Zimmer testified that when he entered Clevenger's cell at around 5:50 p.m. on July 25, 2011, Clevenger appeared to still be under the influence of methamphetamine. According to Zimmer, Clevenger appeared extremely agitated, was talking fast, and was scratching at his arms. Based on his training and 20 years of experience, Zimmer concluded that Clevenger was still under the influence of methamphetamine, and therefore decided to wait a few hours before taking Clevenger's statement to allow any possible side effects of methamphetamine use to subside. Delaying interrogation to allow the defendant time to sober up or to recover from any possible side effects of drug use is not unreasonable or unnecessary. *See United States v. Manuel*, 706 F.2d 908, 914 (9th Cir. 1983) (concluding that delay was not unreasonable where the defendant was "heavily intoxicated when arrested" and where questioning him in such condition "would have been much more likely to produce an unfair and involuntary confession than the procedure actually used"); *cf. United States v. Matus-Leva*, 311 F.3d 1214, 1217 (9th Cir. 2002) (the delay was not unreasonable, even though the statement came a day after the defendant was taken into custody, where the delay

was largely due to the time spent providing medical treatment to the defendant). In this case, the Court credits SBPA Zimmer's testimony that, based on his training and experience, he reasonably believed Clevenger was still under the influence of methamphetamine at 5:50 p.m. on July 25, 2011. Accordingly, it was reasonable for Zimmer to postpone the interrogation until after Clevenger had time to recover.

Clevenger's arguments to the contrary are not persuasive. First, Clevenger contends that this case is different from *Manuel* in that while the tribal police in that case provided the defendant "with a meal and with sleeping accommodations so that he could regain sobriety," 706 F.2d at 914, the agents in this case failed to do that. However, Clevenger concedes that he was fed and that he was provided with two blankets. There is nothing to indicate that under the circumstances of this case, these actions—together with the wait of about seven hours from 5:50 p.m., when Clevenger could first have been interviewed, to 12:30 a.m., when he was interviewed—were not sufficient to allow Clevenger time to recover from his methamphetamine use. Moreover, there is no indication that Clevenger was so intoxicated by methamphetamine as to require medical attention.

Second, Clevenger contends that even if the agents' decision to wait was motivated by humanitarian reasons, it nonetheless amounts to an unreasonable delay because it was meant to obtain a valid confession, and therefore was "for the purpose of interrogation," which is "the epitome of 'unnecessary delay.'" *See Corley*, 129 S. Ct. at 1563. However, under the *McNabb-Mallory* Rule, not every decision to wait before conducting an interrogation is impermissible. Rather, a violation occurs—and suppression is required—only when the government interrogates the defendant *instead of* presenting him to a magistrate judge as quickly as possible. *See, e.g.*, *United States v. Liera*, 585 F.3d 1237, 1243 (9th Cir. 2009) (concluding that suppression was necessary where, "*[i]nstead of presenting Liera to a magistrate as quickly as possible*, the government delayed Liera's arraignment so that it could interrogate Liera a second time and obtain an audio recording of his statements" (emphasis added)); *United States v. Wilson*, 838 F.2d 1081, 1085 (9th Cir. 1988) (concluding that the delay was unreasonable where the officer "*agreed to delay the arraignment* until the agents had obtained a confession or had convinced themselves that none would be forthcoming" (emphasis added)); *cf. United States v. Redlightning*, 624 F.3d 1090,

1007, 1009 (9th Cir. 2010) (the agents' decision to detour on the way to the arraignment, so that they could "'finish the interview'" and obtain a second confession, did not violate the prompt presentment requirement because it "did not result in an unreasoanble delay of the arraignment").

In this case, the government did not interrogate Clevenger *instead of* presenting him to the magistrate judge as quickly as possible. Although the agents postponed the interrogation for about seven hours from 5:50 p.m. until 12:30 a.m., that act did not by itself delay Clevenger's presentment to the magistrate judge. Clevenger was booked into the Brown Field Station at 4:43 p.m. on July 25, 2011. (Selden Decl. ¶ 6.) The first available time that he could have been presented to a magistrate judge was the following morning. "An overnight or weekend delay in arraignment due to the unavailability of a magistrate does not by itself render the delay unreasonable under § 3501(c)." *United States v. Van Poyck*, 77 F.3d 285, 289 (9th Cir. 1996); *see also Redlightning*, 624 F.3d at 1009 (finding no presentment violation where, instead of being arraigned at 2:30 p.m. on the day he was arrested, the defendant was interviewed by the agents from 12:22 p.m. until 5:30 p.m., and therefore had to be arraigned at the next available calendar, which was at 2:30 p.m. the following day); *United States v. Garcia-Hernandez*, 569 F.3d 1100, 1106 (9th Cir. 2009) ("[A]dministrative delays due to the unavailability of government personnel and judges necessary to completing the arraignment process are reasonable and necessary and therefore do not violate the prompt-presentment requirement of Rule 5(a)." (citations omitted)). Accordingly, the agents' decision in this case to hold Clevenger overnight before presenting him to the magistrate judge was not unreasonable.[1]

C.  Conclusion

Because the delay in questioning Clevenger did not unreasonably or unnecessarily delay his arraignment, the Court **DENIES** the motion to suppress based on *Corley*, 129 S. Ct. 1558.

---

[1] Due to a combination of factors, Clevenger was not arraigned the following morning; rather, he was only arraigned two days later on July 28, 2011 at 10:30 a.m. [*See* Doc. Nos. 2 & 3.] That fact, however, is not relevant in this context. By the first available time that Clevenger *could have been* arraigned, he already provided a video-taped statement to the agents. As such, any delay in this case in *conducting the interrogation* had no effect on the *delay in the arraignment*. *See Redlightning*, 624 F.3d at 1109 ("Because the government's conduct did not result in an unreasonable delay of the arraignment, there was no violation of the prompt presentment requirement, and the district court did not err in refusing to suppress the [second] confession.").

**III. Suppression based on violation of *Seibert* and *Williams*.**

Finally, Clevenger argues that his second statement to the agents should be suppressed because the agents engaged in a two-step interrogation strategy prohibited by *Seibert*, 542 U.S. 600, and *Williams*, 435 F.3d 1148. "A two-step interrogation involves eliciting an unwarned confession, administering the *Miranda* warnings and obtaining a waiver of *Miranda* rights, and then eliciting a repeated confession." *United States v. Narvaez-Gomez*, 489 F.3d 970, 973-74 (9th Cir. 2007) (citing *Seibert*, 542 U.S. at 609-10). The Court must engage in a two-step inquiry in deciding whether the defendant's post-*Miranda* statements should be suppressed. *See id.* at 974. First, the Court must determine whether the interrogators' failure to provide the defendant with the *Miranda* warnings was "deliberate." *Seibert*, 542 U.S. at 622 (Kennedy, J., concurring in judgment); *see also Williams*, 435 F.3d at 1157-58 (Justice Kennedy's concurrence in *Seibert* is the Court's holding because it is narrowest grounds with which majority of the Court would agree). "[I]f the two-step method is not deliberate, the post–warning statements are admissible if voluntarily made." *Narvaez-Gomez*, 489 F.3d at 974 (citing *Seibert*, 542 U.S. at 622 (Kennedy, J., concurring in judgment), and *Williams*, 435 F.3d at 1157-58). Second, if the two-step strategy was deliberately employed, "the district court must suppress post–warning statements unless the interrogators take curative measures to apprise the defendant of his rights." *Id.* (citations omitted).

In this case, the two-step interrogation was not deliberately used. The Ninth Circuit indicated that "in determining whether the interrogator deliberately withheld the *Miranda* warning, courts should consider whether objective evidence and any available subjective evidence, such as an officer's testimony, support an inference that the two-step interrogation procedure was used to undermine the *Miranda* warning." *Williams*, 435 F.3d at 1158. Objective evidence "would include the timing, setting and completeness of the prewarning interrogation, the continuity of police personnel and the overlapping content of the pre- and postwarning statements." *Id.* at 1159 (citations omitted). Here, the initial questioning at 5:50 p.m. was not intended for purposes of interrogation; rather, SBPA Zimmer testified that it was intended to assess whether Clevenger was still under the influence of methamphetamine. This weighs against finding that the agents' use of the two-step strategy was "deliberate." *See Seibert*, 542 U.S. at 620 (Kennedy, J., concurring in

judgment) ("An officer may not realize that a suspect is in custody and warnings are required. The officer may not plan to question the suspect or may be waiting for a more appropriate time."); *see also Oregon v. Elstad*, 470 U.S. 298, 308-09 ("It is an unwarranted extension of *Miranda* to hold that a simple failure to administer the warnings . . . so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period.").

Moreover, in this case, there is no indication that the agents referenced the pre-warning statements when they interviewed Clevenger at 12:30 a.m., or that they were even concerned with those statements, which dealt primarily with his methamphetamine use, when interviewing him about the suspected charge of alien smuggling. *See Narvaez-Gomez*, 489 F.3d at 974. The brevity of the first interrogation, the change in setting, and the time span of approximately seven hours between the statements also indicate a lack of deliberateness. *See id.*

Accordingly, because the agents did not deliberately employ the two-step strategy, and because Clevenger does not dispute that his post-warning statements were voluntarily and knowingly made, the Court **DENIES** the motion to suppress on this ground. *See Seibert*, 542 U.S. at 621-22 (Kennedy, J., concurring in judgment) ("The admissibility of postwarning statements should continue to be governed by the principles of *Elstad* unless the deliberate two-step strategy was employed."); *Elstad*, 470 U.S. at 309 ("Though *Miranda* requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made.").

## CONCLUSION

For the foregoing reasons, Clevenger's motion to suppress his statements is **DENIED**.

**IT IS SO ORDERED.**

Date: October 18, 2011

_____
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**